UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALBERTO PAUL,

                Plaintiff,

        -against-

ENHANCED RECOVERY
COMPANY, LLC,

                Defendant.
-------------------------------------------------------------------X

For Online Publication Only

**ORDER**
19-CV-4664 (JMA) (AYS)

**FILED**
**CLERK**

11/17/2020 4:32 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES**

Jonathan M. Cader
David M. Barshay
Barshay Sanders, PLLC
100 Garden City Plaza
Garden City, NY 11530
     *Attorneys for Plaintiff Alberto Paul*

Scott S. Gallagher
50 North Laura Street
Suite 2600
Jacksonville, Florida 32202

Edward Heppt
1301 Avenue of the Americas
21st Floor
New York, NY 10019
     *Attorneys for Defendant Enhanced Recovery Company, LLC*

**AZRACK, United States District Judge:**

## I.      BACKGROUND

Plaintiff Alberto Paul ("Plaintiff") brings this action against Enhanced Recovery Company, LLC ("Defendant"), a debt collector, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA").  (Amended Complaint, ("Am. Compl."), ECF No. 16 at 3.)  The claims arise from two debt collection letters—dated August 13, 2018 (the "August Letter") and

September 24, 2018 (the "September Letter") (collectively, the "Letters")—Defendant sent to Plaintiff to collect an outstanding debt of $1,964.88 he owed to Sprint.  (Id.)

In both Letters, Defendant offered to settle Plaintiff's account for less than the full balance of his payoff amount.  The August Letter conveyed a settlement offer of $1,375.42, while the September Letter offered him $1,277.17.  (ECF No. 16-1 at 1; ECF No. 16-2 at 1.)  Other than the different amounts of the settlement offers and when each was dated, the Letters are indistinguishable.  In particular, both Letters contain these features:

- The front of each Letter includes the following validation language (ECF No. 16-1 at 1; 16-2 at 1.):

Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to establish service with Sprint at a future date, the remaining balance may need to be paid in full prior to the consideration of any future services being granted according to the Sprint Credit Policy.

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

- Under the signature line, the Letters contain various methods of contact, including a mailing address to "[s]end correspondence to:" ("Address 1").  (Id.):



For self-service options, please visit our website at www.ercbpo.com/help.

Telephone: (800) 656-9049 Toll Free. All calls are recorded and may be monitored for training purposes.

Send correspondence to: ERC, P.O. Box 57610, Jacksonville, FL 32241

Office Hours (Eastern Time): Mon-Thurs: 8:00 am-11:00 pm, Fri: 8:00 am-10:00 pm, Sat: 8:00 am-8:00 pm

- The bottom of each Letter also includes a detachable payment slip.  The payment slip features a return address for Defendant, above which language explains: "Please do not send correspondence to this address."  ("Address 2.")  The payment slip is accompanied by a courtesy return envelope with a clear window through which the mailing address ("Address 3") is visible.  (ECF No. 20-1 at 2.)  The only difference between the payment slips in the August Letter and the September Letter is the dates.  (Id.):





- Finally, the reverse side of each Letter includes several federal, state, and local notices. At the bottom of the page is Defendant's "[c]orporate [i]nformation," including an address, ("Address 4"), as well as a 1-800 number to use "[t]o speak directly to a live operator."  (ECF No. 16-1 at 2; 16-2 at 2.):

---

**Federal Notice:**
This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.

The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.

**New York City Residents:**
New York City Department of Consumer Affairs License Number: 1394588, 2048142, 2048143, 2048140, and 2048141.

**New York State Residents:**
Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C./1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:

a)  the use or threat of violence
b)  the use of obscene or profane language; and
c)  repeated phone calls made with the intent to annoy, abuse, or harass.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1)  Supplemental security income, (SSI);
2)  Social security;
3)  Public assistance (welfare);
4)  Spousal support, maintenance (alimony) or child support;
5)  Unemployment benefits;
6)  Disability benefits;
7)  Workers' compensation benefits;
8)  Public or private pensions;
9)  Veterans' benefits;
10) Federal student loans, federal student grants, and federal work study funds; and
11) Ninety percent of your wages or salary earned in the last sixty days.

**Our Corporate Information is:**
Enhanced Recovery Company, LLC, Doing Business As, ERC and/or Enhanced Resource Centers, 8014 Bayberry Road, Jacksonville, FL 32256

To speak directly to a live operator, during normal business hours, and bypass menu prompts: (800) 685-2541

---

Plaintiff initiated the instant litigation on August 13, 2019.  (ECF No. 1.)  On November 13, 2019, Plaintiff filed an amended complaint in which he alleges that the Letters violate the FDCPA for various reasons.  First, he claims that because both Letters provide for a thirty-day validation period, the length of the validation period is unclear.  (ECF No. 16 at 4-27.)  Next, Plaintiff contends that because both Letters contain four addresses, it is unclear which address should be used to

4

submit payment and which address should be used to send written disputes.  (Id.)  In addition, Plaintiff alleges that the validation notice contained in the Letters is "overshadowed" by other text. (Id.)  After appearing for a pre-motion conference before the undersigned, Defendant now moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 19.)  Plaintiff opposes Defendant's motion.  (ECF No. 21.)  For the reasons set forth below, Defendant's motion is **GRANTED** in its entirety.

## II.    DISCUSSION

The Court dismisses the complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to allege plausible claims to relief under the FDCPA.

**A. Standard**

**1. Rule 12(b)(6)**

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must have alleged sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice, nor will "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

Ordinarily, on a motion to dismiss, a court is confined to "the allegations contained within the four corners of [the] complaint."  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d

Cir. 1998).  However, this standard "has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken."  Young AE Kim v. Advanced Call Center Technologies, LLC, No. 19-CV-4672, 2020 WL 5893964, at *1 (E.D.N.Y. Oct. 5, 2020) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)).  In cases brought pursuant to the FDCPA, courts that have broadly interpreted this standard have also included debt collection letters that complaints allege violate the FDCPA.  Id.

### 2.  Section 1692e

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  There are sixteen subsections that outline a non-exhaustive list of practices that fall within the prohibited conduct under § 1692e. A catch-all subsection, § 1692e(10), bans "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  Since the list in the subsections is non-exhaustive, "a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  A debt collection letter is deceptive if it is susceptible to more than one reasonable interpretation, at least one of which is inaccurate.  See id. at 1319; see also Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012).

### 3.  Section 1692g

Section 1692g requires debt collectors to provide consumers with specific information within five days of initiating contact.[1]  The required information under the statute includes

---

[1]  In particular, the required information is:

    (1)  the amount of the debt;
    (2)  the name of the creditor to whom it is owed;

providing a consumer with a statement that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).

The thirty-day period referenced in this statement is commonly referred to as the "validation period" and "begins to run upon the debtor's receipt of the initial notice."  Arend v. Total Recovery Servs., Inc., No. 05-CV-3064, 2006 WL 2064977, at *2 (E.D.N.Y. July 24, 2006).  The validation notice is intended "to protect consumers from 'debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid' by 'inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of the debt.'"  Hochhauser v. Grossman & Karaszewski, PLLC, No. 19-CV-2468, 2020 WL 2042390, at *4-5 (E.D.N.Y. Apr. 28, 2020) (quoting Lotito v. Recovery Assocs. Inc., No. 13-CV-5833, 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014)) (alterations in original). It is a violation of § 1692g if a debt collector "sends the debtor a subsequent collection letter within the validation period and such letter 'overshadows or contradicts the consumer's right to dispute the debt."  Arend, 2006 WL 2064977 at *2 (quoting Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d 643, 660 (S.D.N.Y. 2006)).

---

(3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the debt's validity, or any portion of it, the debt will be assumed to be valid by the debt collector;

(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion of it, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

See 15 U.S.C. § 1692g.

**4. Least Sophisticated Consumer**

In evaluating whether a communication violates § 1692e or § 1692g, the Court applies an objective standard by considering how the "least sophisticated consumer" would understand the debt collection letter.  Carlin v. Davidson Fink, LLP, 852 F.3d 207, 216 (2d Cir. 2017); Clomon, 988 F.2d at 1318.  Though the "least sophisticated consumer" does not have the astuteness of a "Philadelphia lawyer," they are neither "irrational nor a dolt."  Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 1996).  Additionally, the "least sophisticated consumer" can be expected to possess a "willingness to read a collection notice with some care."  Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360, 363 (2d Cir. 2005).  The purpose of the "least sophisticated consumer" standard is to protect "the gullible as well as the shrewd."  Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008).  This objective test protects consumers against deceptive debt collection practices while also protecting debt collectors from liability for "bizarre or idiosyncratic" interpretations of debt collection letters.  Clomon, 988 F.2d at 1320.  While "courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss."  Diaz v. Residential Credit Sols., Inc., 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (quoting Rozier v. Fin. Recovery Sys., No. 10-CV-3273, 2011 WL 2295116, at *2 (E.D.N.Y. June 7, 2011)).

**B. Application**

Each of Plaintiff's claims that Defendant violated the FDCPA fails as a matter of law for the reasons explained below.

**1. Validation Period Claims**

Plaintiff first argues that the Letters violate the FDCPA because each one contains a thirty-day validation period.  According to Plaintiff, the Letters "fail to clarify whether the applicable

thirty-day period is the period provided by the August Letter, or, alternatively, the period provided by the September Letter."  (ECF No. 16 at 5.)  Reading the validation notice in each Letter, the least sophisticated consumer would understand that each Letter imposed a separate thirty-day validation period and would not be confused by Plaintiff's idiosyncratic interpretation of the Letters.  Accordingly, Plaintiff's claims based on the validation period fail.

The language used in the validation notice is the same in each Letter.  It states:

> Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.  If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you.  We will mail the verification or copy of the judgment against you.  Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the above section of this notice.

(ECF No. 16-1 at 1; ECF No. 16-2 at 1.)

Having received both Letters, the least sophisticated consumer would understand that the August Letter provided one thirty-day validation period.  The September Letter, dated forty-two days after the August Letter, would be interpreted by the least sophisticated consumer to then impose a second validation period consisting of an additional thirty days.  Such an interpretation is permissible under the FDCPA because § 1692g "does not prohibit a debt collector from giving the consumer more than thirty days to exercise his right to obtain validation of the debt."  Arend, 2006 WL 2064977 at *3.  Moreover, the least sophisticated consumer would not find it deceitful or false "for Defendant to offer Plaintiff additional time to exercise his right to obtain validation of the debt."  Id.

District courts throughout the United States, including in this district, have rejected claims that a debt collector who sent a second letter with a second validation notice violated the FDCPA.

See, e.g., Rosen v. LJ Ross Assocs., Inc., No. 19-CV-5516, 2020 WL 1332145, at *5 (E.D.N.Y. Mar. 23, 2020) ("A debt collector's issuance of a second debt collection letter with a second validation notice does not overshadow the original validation notice nor would it confuse the LSC"); McCray v. Deitsch & Wright, P.A., 343 F. Supp. 3d 1209, 1218 (M.D. Fla. 2018) ("Both Collection Notices provided the required statutory FDCPA disclosures and did not diminish Plaintiff's rights to dispute the debt[.]"); Curry v. AR Res., Inc., No. 16-CV-517, 2016 WL 8674254, at *3 (D.N.J. Nov. 4, 2016) ("[A] second 30-day validation notice sent by a debt collector only enlarges a debtor's rights and does not violate the FDCPA.").  Here, the September Letter merely "grant[ed] the consumer additional time to dispute the debt, which the debt collector is permitted to do."  Rosen, 2020 WL 1332145, at *5.  Such a situation would not confuse the least sophisticated consumer, and therefore does not violate the FDCPA.  Accordingly, Plaintiff's claims regarding the validation period must be dismissed.

### 2. Validation Notice

Plaintiff next disputes the formatting used to print the validation notice in the Letters.  He argues that "the 15 U.S.C. § 1692g rights are positioned in such a way that it discourages the least sophisticated consumer from reading them."  (ECF No. 16 at 10.)  In particular, he claims that the Letters' instruction to "[p]lease see the reverse side of this letter for important notices concerning your rights" would lead the least sophisticated consumer "to believe that the immediately preceding paragraph containing the validation notice was neither 'important' nor contained any 'rights.'" (ECF No. 21 at 19.)  Plaintiff's argument fails as a matter of law.

A debt collector must clearly convey the validation notice required by § 1692g to the debtor in a manner that is not "overshadowed or contradicted by other language in communications to the debtor" such that "it would make the least sophisticated consumer uncertain as to her rights."

10

Jacobson, 516 F.3d at 90.  Here, when reading the Letters in their entirety, the least sophisticated consumer would not overlook the validation notice based on the manner and place it was printed on the front page of the letter.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff contends the Letters should have used "visually conspicuous transitionary language." (ECF No. 16 at 10, 14.)  However, he cites to no authority that imposes such a requirement.  Indeed, as courts have recognized, the FDCPA does not mandate that every collection letter contain transitional language, and "[t]he absence of language explicitly directing the reader to the validation notice does not render a letter deficient as a matter of law."  Allen v. Advanced Call Ctr. Techs., L.L.C., No. 18-CV-2873, 2019 WL 4887683, at *7 (E.D.N.Y. Sept. 30, 2019).

Next, Plaintiff challenges the Letters' instruction at the bottom directly above the payment slip that says: "NOTICE—SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS."  (ECF No. 16-1 at 1; ECF No. 16-2 at 1.)  He suggests that the least sophisticated consumer would simply ignore the prior content of the Letters printed before that language. (ECF No. 19 at 19.)  Plaintiff's argument fails because the least sophisticated consumer "is charged with reading the entire collection letter and interpreting the various statements in conjunction with one another."  Hochhauser, 2020 WL 2042390, at *4-5.  The Letters' "reminder[s] to look at the reverse side do[] not suggest that the consumer should ignore the front page of the letter[s]."  Id.  The fact that the validation notice is on the front of the letter is a strong indicator of its importance irrespective of what is contained on the back of the letter.

Plaintiff, however, argues that the Court should look to Papetti v. Rawlings Financial Servs., LLC, 121 F. Supp. 3d 340 (S.D.N.Y. 2015), where a motion to dismiss was denied because the debt collector failed to effectively communicate the consumer's validation rights.  The situation in

Papetti is materially different from what happened here, however, because the letter in question contained an affirmative misdirection.  In Papetti, the letter itself did not contain a validation notice and instead directed the consumer to the reverse of the letter.  In actuality, the validation notice was printed on a separate piece of paper and the reverse of the letter was blank.  Id.  Here, there is no affirmative misdirection.  The least sophisticated consumer is expected to read the front page of the letter that clearly contains the validation notice.  Accordingly, there is no violation of the FDCPA, and Plaintiff's claims based on the formatting of the validation notice must be dismissed.

**3.  Multiple Address Claims**

Finally, Plaintiff raises numerous claims regarding the four addresses contained in each Letter.  According to Plaintiff, the least sophisticated consumer would be confused as to which address to use for payment and which to use for correspondence.  (ECF No. 16 at 5-27.)  The Court disagrees because the purpose of each address is clearly explained in the Letters, and the least sophisticated consumer can be expected to read and follow the instructions regarding each one.

Simply because a debt collection letter includes multiple addresses "does not render it misleading . . . unless it is unclear which address a consumer should contact."  Kucur v. Fin. Recovery Servs., Inc., No. 19-CV-5453, 2020 WL 1821334, at *4 (E.D.N.Y. Apr. 9, 2020) (citing Park v. Forster & Garbus, LLP, No. 19-CV-3621, 2019 WL 5895703, at *6 (E.D.N.Y. Nov. 12, 2019)).  A letter is materially misleading if it "explicitly misdirects consumers . . . to the wrong address."  Id.  (citing Carbone v. Caliber Home Loans, Inc., No. 15-CV-4919, 2016 WL 8711197, at *4 (E.D.N.Y. Sept. 30, 2016)).

Here, the Letters are not misleading, even though they contain four addresses.  The purpose of each address is clear and would be understood by the least sophisticated consumer.  Address 1 is accompanied by the statement: "Send Correspondence to:"  (ECF No. 16-1 at 1; ECF No. 16-2

at 1.)  It is also surrounded by alternative means of communication: a website address and a toll-free telephone number.  (<u>Id.</u>)  In addition, the text above it instructs the reader to "notify our office <u>below</u> in writing."  (<u>Id.</u>) (emphasis added).  The least sophisticated consumer would understand to use this address to send disputes.  In contrast to Address 1, the text above Address 2 instructs: "Please do not send correspondence to this address."  (<u>Id.</u>)  The least sophisticated consumer would be expected to read this language and understand that Address 2 is not to be used for sending correspondence, including payment or notices of dispute.

Further, the least sophisticated consumer would deduce from the context in which Address 3 is printed that it is to be used to submit payment.  The operative language is printed on a payment slip that the consumer is instructed to submit with the payment.  In addition, Address 3 is positioned to be visible through a window of a courtesy return envelope so that the consumer does not have to address his or her own envelope.  <u>See</u> <u>Saraci v. Convergent Outsourcing, Inc.</u>, No. 18-CV-6505, 2019 WL 1062098, at *3 (E.D.N.Y. Mar. 6, 2019) ("to boot, the collection letter includes a return envelope which, unless ignored or misused in some fashion, ensures dispatch of the communication to the proper address").  Though Plaintiff argues that "not every individual would save or use extraneous materials enclosed with a dunning letter," (ECF No. 21 at 21), the standard for analyzing the Letters is not to consider every conceivable way a consumer could interpret them.  Rather, the Court must look to how the least sophisticated consumer would understand the Letters.  Based on the context, the least sophisticated consumer would know to send payment using the payment slip and the return envelope.

Finally, Address 4 is printed on the reverse of the Letters and is accompanied by the phrase: "Our Corporate Information is:"  (ECF No. 16-1 at 2; ECF No. 16-2 at 2.)  The context of this address—printed on the reverse of the Letters and following various federal, state, and local

13

disclaimers and without any instructions regarding the mailing of payments or disputes—would not lead the least sophisticated consumer to send a payment or dispute to the corporate address. Plaintiff's argument that the least sophisticated consumer would be confused because the corporate address lists a street, rather than a PO Box, is unsupported by any authority and unpersuasive considering the clear instructions and context on the front of the Letters regarding sending correspondence and payment.

When reading the Letters in their entirety, the least sophisticated consumer would not be misled and would understand that each address has a different purpose. See Jacobs v. AllianceOne Receivables Mgmt., Inc., No. 19-CV-3447, 2020 WL 6273942, at *3 (E.D.N.Y. Oct. 26, 2020) (finding that a letter was "not misleading, even though it contains three addresses" because "[t]he purpose of each address is explicit and would be understood by the least sophisticated consumer"); Young Ae Kim, 2020 WL 5893964, at *3 (finding a letter with multiple addresses did not violate the FDCPA because the least sophisticated consumer would understand that disputes must be mailed to one address and payments to another).  Accordingly, the least sophisticated consumer, who is "capable of 'making basic, reasonable and logical deductions and inferences,'" would do so here and therefore know where to send payment and where to send correspondence "if they were to read" the Letters in their entirety.  Kucur, 2020 WL 1821334, at *4 (quoting Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007)).

Nevertheless, Plaintiff argues that a recent case from this district supports her position that the inclusion of four addresses on the Letters constitutes a violation of the FDCPA.  In Pinyuk v. CBE Group, Inc., the court granted leave to amend, finding that a proposed amended complaint stated a plausible claim that the least sophisticated consumer would be "without clear direction as to where to mail a written request" when confronted with three addresses in a debt collection letter.

14

17-CV-5753, 2019 WL 1900985 at *7 (E.D.N.Y. Apr. 29, 2019).  The court credited the plaintiff's argument that without clear instruction as to a specific address to use to send a written request, "the least sophisticated consumer could be confused and decide not to send a request to any of the addresses."  Id.

In contrast to the letter in Pinyuk, the Letters here provide clear direction as to which of the four addresses should be used for payment and for correspondence.  It is implausible that Plaintiff would be confused by the inclusion of multiple addresses when the Letters explain the purpose of each one.  In light of the Letters' clear instructions, there was no risk that Plaintiff would not pay or "disput[e] the letter at all," unlike in Pinyuk. Id.  Accordingly, Plaintiff's causes of action relating to the addresses in the Letters must be dismissed because the least sophisticated consumer would not be confused regarding which of the four address to use to send payment or correspondence.

### III.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is hereby **GRANTED**, and Plaintiff's complaint is dismissed in its entirety.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:  November 17, 2020
         Central Islip, New York

                                          /s/ (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE